**STANZLER LAW GROUP**
A Professional Corporation
JORDAN S. STANZLER (54620)
jstanzler@stanzlerlawgroup.com
JEFFREY M. CURTISS (239199)
jcurtiss@stanzlerlawgroup.com
2275 E. Bayshore Road, Suite 100
Palo Alto, CA 94303
Telephone:    (650)739-0200
Facsimile:    (650)739-0916

Attorneys for Plaintiff WiFi Rail, Inc.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| WIFI RAIL, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 3:18-cv-02269-EDL<br><br>**PLAINTIFF WIFI RAIL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**<br><br>Hearing: May 29, 2018<br>Time: 9:00 a.m.<br>Courtroom: E<br>Judge: Magistrate Elizabeth D. Laporte |

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................ 1

STATEMENT OF ISSUES ............................................................... 3

STATEMENT OF FACTS ............................................................... 4

I.    BART'S PURPORTED BASIS FOR REMOVAL ........................................... 4

II.   WIFI RAIL'S AMENDED COMPLAINT ............................................... 4

III.  WIFI RAIL'S MOTION TO COMPEL .................................................. 5

IV.  WIFI RAIL DOES NOT NEED TO PROVE PATENT INFRINGEMENT IN ORDER TO ESTABLISH A BREACH OF THE LICENSE AGREEMENT BASED ON BART'S USE OF WIFI RAIL'S TECHNOLOGY ............................................................ 7

ARGUMENT ............................................................................ 8

I.    REMOVAL IS NOT PROPER BECAUSE WIFI RAIL DID NOT ASSERT A CLAIM INVOLVING A FEDERAL QUESTION IN ITS COMPLAINT ................................ 8

    A.   The Defendant BART Has the Burden of Demonstrating That Removal is Proper ........................................................................ 8

    B.   This Action Is Subject To Remand Because rhe Complaint Does Not State A Claim For Relief Which Necessarily Implicates A Substantial Issue of Federal Law ............................................................... 9

II.  THERE IS NO PATENT JURISDICTION IN THIS ACTION ............................... 10

    A.   This Action Lacks Federal Jurisdiction Because It Does Not Necessarily Require the Resolution Of A Substantial Question of Federal Law .................................... 10

    B.   Analogous Case Law Dictates That This Action Be Remanded to State Court . 11

III. THE ABSENCE OF ANY VALID BASIS FOR REMOVAL WARRANTS AWARDING PLAINTIFF ITS FEES AND COSTS ASSOCIATED WITH THIS MOTION TO REMAND ................................................................. 14

CONCLUSION ........................................................................ 15

i

# TABLE OF AUTHORITIES

**Cases**

*AT&T v. Integrated Network Corp.*
(Fed. Cir. 1992) 972 F.2d 1321 ............................................... 12, 13

*Beneficial Nat'l Bank v. Anderson*
(2003) 539 U.S. 1, 123 S. Ct. 2058 ............................................... 10

*Biosensory, Inc. v. Bedoukian*
(D. Conn.) 2007 U.S. Dist LEXIS 56118 ............................................... 13

*Board of Regents v. Nippon Tel. & Tel. Corp.*
(2005) 414 F.3d 1358 ............................................... 13

*Boggild v. Kenner Products, Div. Of CPG Products Corp.*
(6th Cir. 1988) 853 F.2d 465 ............................................... 10, 11

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*
(1989) 489 U.S. 141 ............................................... 2

*Caterpillar Inc. v. Williams*
(1987) 482 U.S. 386, 107 S. Ct. 2425 ............................................... 9, 10

*Christianson v. Colt*
(1988) 486 U.S. 800 ............................................... 11

*Duncan v. Stuetzle*
(9th Cir. 1996) 76 F.3d 1480 ............................................... 9

*Ethridge v. Harbor House Restaurant*
(9th Cir. 1988) 861 F.3d 1389 ............................................... 8

*Green Edge Enters., LLC v. Int'l Mulch Co.*
(E.D. Mo.) 2009 U.S. Dist LEXIS 27384 ............................................... 14

*Gunn v. Minton*
(2013) 568 U.S. 251, 133 S. Ct. 1059 ............................................... 10

*Rivet v. Regions Bank of Louisiana*
(1998) 522 U.S. 470 ............................................... 9, 11

*Ross v. Haw. Nurses' Ass'n Office & Prof'l Emples. Int'l Union Local 50*
2018 U.S. Dist. LEXIS 22262 ............................................... 10

*Tech. Licensing Corp. v. Intersil Corp.*
(N.D. Cal.) 2009 U.S. Dist. LEXIS 129941 ............................................... 11, 12

*Uroplasty, Inc. v. Advanced Uroscience, Inc..*
(Fed. Cir. 2001) 239 F.3d 1277 ............................................... 13

*Wham-O Mfg. Co. v. All-American Yo-Yo Corp.*
(E.D.N.Y. 1973) 377 F. Supp. 993 .................................................. 14

### STATUTES

28 U.S.C. §1338 .................................................. 11, 14

28 U.S.C. §1441(a) .................................................. 9

28 U.S.C. §1441(b) .................................................. 8, 9

28 U.S.C. §1447(c) .................................................. 14

35 U.S.C. ¶292(a) .................................................. 12

Fed. R. Civ. P. 11(b) .................................................. 14

Business & Professions Code
§17200 .................................................. 12

## INTRODUCTION

The plaintiff WIFI Rail asks this Court to remand this action to state court. Removal to federal court was improper, because no basis for removal appears on the face of the initial or amended complaint. Indeed, the defendant San Francisco Bay Area Rapid Transit District ("BART") concedes that both the initial and amended complaints were "not removable" on their face. (Petition For Removal, Dkt. No. 1 at 2:23-24; 2:27-28.)

WIFI Rail filed this action in the Superior Court of California in and for the County of Alameda on March 25, 2016. WIFI Rail filed an amended complaint on or about December 28, 2017. The initial and operative complaints allege three California state law claims against the defendant BART: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) conversion. WIFI Rail seeks remedies commonly available under these claims for relief, including specific performance of the agreement, or, alternatively, compensatory damages, prejudgment interest, costs of suit and attorney's fees. (Amended Complaint, Dkt. No. 1-3 at 2-12.)

On April 16, 2018, BART filed a petition for removal in this Court, pursuant to 28 U.S.C. §§ 1441 and 1446. The petition seeks removal on the basis of federal question jurisdiction, stating that WIFI Rail is -- in substance if not in form -- asserting a claim for patent infringement. BART argues that, because the federal courts have exclusive jurisdiction over patent claims, removal is proper. (Petition, Dkt. No. 1 at 4:2-14.) BART's assertion of federal jurisdiction fails on several grounds.

First, WIFI Rail is not asserting a claim for patent infringement. There is no cause of action for patent infringement in its initial or amended complaints. Indeed, the word "patent" does not even appear in WIFI Rail's initial or amended complaints. Rather, WIFI Rail seeks, and only seeks, relief available under its garden-variety state law claims for relief.

Second, the court deciding this action does not have to address an essential question of federal

law. While WIFI Rail does hold six United States patents, and while BART may very well be infringing on those patents by virtue of the installation of a 4.9 GHz wireless communications system, WIFI Rail does not have to raise or prove patent infringement in order to prevail on any of its claims for relief. For example, breach of the contract in this action can be established by any number of ways in this action, none of which need to involve the use of WIFI Rail's patents. WIFI Rail intends to prove that BART terminated the agreement without providing either appropriate written notice or an opportunity to cure, as required by the agreement. BART's termination of the agreement – in violation of the terms governing termination of the agreement -- has nothing to do with WIFI Rail's patents.

Even if the operative complaint were construed to state a claim for the unauthorized use of WIFI Rail's technology, this claim would not need to allege infringement of WIFI Rail's patents. The agreement at issue protects WIFI Rail against BART's use of its know-how and technology if, as WIFI Rail alleges and seeks to prove, BART is in breach of the agreement. WIFI Rail's know-how and technology include, but are certainly not limited to, its patents. WIFI Rail's technology is defined by its agreement with BART to include "all patents, technical information, know-how, Software, Source Code and other intellectual property of any kind that are used by WIFI Rail from time to time in the design, installation and operation of the Wi-Fi Infrastructure[.]" (License Agreement, Dkt. No. 1-1 at 94.) Thus, WIFI Rail can prove unauthorized use of its technology – i.e., breach of the license agreement – by proving the unauthorized use of its technical information, know-how, software, source code or other intellectual property – without even addressing patent infringement. See, e.g., *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 165-66 (1989) ("[S]tate trade secret law [has] coexisted harmoniously with federal patent protection for almost 200 years.").

Third, BART's sole basis for removal in the petition is an April 12, 2018 motion to compel filed by WIFI Rail. WIFI Rail filed the motion to obtain drawings and specifications concerning a

2
PLAINTIFF WIFI RAIL, INC.'S MPA IN SUPPORT OF MOTION TO REMAND
*WiFi Rail, Inc. v. BART* (Northern District of California, Case No. 3:18-cv-02269-EDL

4.9GHz system deployed by BART. WIFI Rail sought the plans and specifications, because: "The information is relevant to show that BART has violated the License Agreement dated December 15, 2008 and misappropriated WIFI Rail's intellectual property." (Motion To Compel, Dkt. No. 1-1 at 3:1-2.) The motion is careful to point out that WIFI Rail's intellectual property consists of more than just patents: it is a combination of know-how, trade secrets and patented technology. Further, the motion is careful to point out that the use of WIFI Rail's technology constitutes a breach of the License Agreement, not an instance of patent infringement. (*Id.*)

Fourth, the timing of the filing of the petition for removal is highly suspect. BART filed its notice of removal on the day its General Manager, Grace Crunican, was to be deposed. (Curtiss Decl., Ex. A.) Attorneys for BART notified attorneys for WIFI Rail that Ms. Crunican would not appear for her deposition less than an hour before the deposition was to begin. And BART did not notify WIFI Rail of the removal of this action prior to filing the petition for removal. BART's petition for removal is a strategic attempt to avoid discovery in this action. Further, and equally troubling, trial in this matter had been scheduled for May 21, 2018 in Alameda County Superior Court. BART's removal has successfully delayed WIFI Rail's right to its day in court.

In conclusion, BART's assertions that this is a patent infringement case are manifestly erroneous. Its removal is an attempt to delay and avoid. Accordingly, the Court should award WIFI Rail its costs and fees in bringing this motion and promptly send this case back where it belongs – Alameda County Superior Court.

## STATEMENT OF ISSUES

1. Whether this action should be remanded to the Superior Court in and for the County of Alameda for lack of federal jurisdiction. Specifically, with respect to subject matter jurisdiction, whether this action necessarily requires the resolution of some substantial issue of patent law such that jurisdiction is appropriate in federal court.

2. Whether WIFI Rail is entitled to its costs and expenses incurred in bringing the instant motion to remand.

## STATEMENT OF FACTS

### I. BART'S PURPORTED BASIS FOR REMOVAL

In its Notice of Removal, BART asserts that WIFI Rail's filing of a motion to compel production of documents on April 12, 2018 is the basis for federal jurisdiction over this action. BART does not assert any other basis for federal jurisdiction over this action.

Specifically, BART claims:

> 5. On or about April 12, 2018, Plaintiff served a motion to compel production of documents in which Plaintiff disclosed that it was seeking damages and injunctive relief based on BART's alleged unauthorized use of technology disclosed in six U.S. patents, a U.S. patent application, and an international patent application, which were attached as an exhibit to Plaintiff's motion.

(Notice of Removal, Dkt. No. 1 at 2:1-5.)

> 6. Plaintiff's motion to compel made it clear for the first time that Plaintiff is seeking damages and injunctive relief based on BART's alleged unauthorized use of Plaintiff's patented technology and intellectual property.

(Dkt. No. 1 at 2:9-11.)

As discussed in greater detail below, this is not a patent infringement case. Accordingly, there is no subject matter jurisdiction and remand is therefore warranted.

### II. WIFI RAIL'S AMENDED COMPLAINT

WIFI Rail's amended complaint against BART asserts claims for: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) conversion. WiFi Rail seeks, in relief, specific performance, or, alternatively, compensatory damages, prejudgment interest, costs of suit and attorney's fees. The complaint does not state a claim for patent infringement. Indeed, it does not even mention the word "patent". (Amended Complaint, Dkt. No. 1-3 at 2-12.)

The salient allegations in the amended complaint are as follows:

- ¶ 8. On or about December 18, 2008, WiFi Rail and BART entered into the Wi-Fi License Agreement ("Wi-Fi Agreement"). Installation of the WiFi Rail

4

network was to occur in five phases, each phase adding network service to more stations in the BART system.

- ¶ 9. Under the terms of the Wi-Fi Agreement, BART granted WiFi Rail an exclusive license to install and operate Wi-Fi equipment and facilities to provide Wi-Fi service to BART passenger rail cars and stations. The term of the Wi-Fi Agreement is 10 years with an option to WiFi Rail to extend the term for an additional 10 years. WiFi Rail is required to supply at its own expense all components of the system. WiFi Rail holds title to such equipment and components . . . The Wi-Fi Agreement was terminable by either party after 30 days' written notice specifying a material failure to perform the covenants of the agreement and the failure of the other party to cure or begin to cure within the 30-day period.

- ¶ 10. In conjunction with entering into the Wi-Fi Agreement, BART issued a permit for WiFi Rail to install Phase 2. WiFi Rail built and completed Phase 2 over the winter of 2009.

- ¶¶ 12-15. Problems arose when WiFi Rail sought to proceed with Phase 3 of the project. Between 2012 and 2014, BART repeatedly failed to issue a permit to WiFi Rail to proceed with the phase, offering various excuses for the delays. Finally, in or about late July 2014, WiFi Rail personnel met with the new Chief of Telecom Revenue, Mr. Misra, wherein he with requested that WiFi Rail voluntarily cancel the Wi-Fi Agreement.

- ¶¶ 16-18. Unbeknownst to WiFi Rail, in or about August 2014, BART contracted with Leverage Information Systems to test WiFi Rail's network. BART used the tests as a pretext to terminate the Agreement.

- ¶ 19. On or about November 5, 2014, counsel for BART forwarded to WiFi Rail for the first time the reports from both phases of Leverage testing and falsely asserted that WiFi Rail had not and could not provide fully functional Wi-Fi service. Counsel wrote that "we hereby terminate the 2008 Wi-Fi License Agreement (License Agreement) for provision of commercial wireless service on BART premises."

- ¶ 20. On or about November 6, 2014, BART changed the locks on WiFi Rail's facilities on BART property and prohibited WiFi Rail from accessing any of its equipment and other assets.

(Dkt. No. 1-3 at 5-9.)

### III. WIFI RAIL'S MOTION TO COMPEL

On or about April 12, 2018, WIFI Rail filed a motion to compel the production of drawing and specifications concerning a 4.9GHz system deployed by BART. WIFI Rail sought the plans and

specifications, because "The information is relevant to show that BART has violated the License Agreement dated December 15, 2008 and misappropriated WIFI Rail's intellectual property." (Motion To Compel, Dkt. No. 1-1 at 8:13-16.) The motion is careful to point out that WIFI Rail's intellectual property consists of a combination of know-how, trade secrets and patented technology. (Dkt. No. 1-1 at 16:14-19.) Further, the motion states that the use of WIFI Rail's know-how, trade secrets and/or patented technology constitutes a breach of the License Agreement. (Dkt. No. 1-1 at 16:19-28) WIFI Rail does not allege patent infringement – either in the operative pleading or in the motion.

The motion notes that the License Agreement gave BART a *future license* to use WIFI Rail's patents, know-how, technical information and intellectual property. The future license becomes effective when the License Agreement expires in 2029. (Dkt. No. 1-1 at 15:14-19.) WiFi Rail did not give BART the right to that technology now.

The impetus for the motion was the deposition of Htee Hmun on April 3, 2018, wherein Hmun admitted that BART has constructed a 4.9 GHz wireless system that uses "WFR Technology". (Dkt. No. 1-1 at 14:7-9.) That is a defined term in the License Agreement and refers to WIFI Rail's "patents", "know-how", "technical information" and "intellectual property of any kind". (License Agreement, Dkt. No. 1-1 at 94.) WIFI Rail sought BART's plans and specifications for the system, because these documents are likely additional evidence that BART is using technology in violation of the License Agreement.

The misappropriation of WFR Technology to which Hmun admitted, as defined in the agreement, does not necessarily require an inquiry into patents, because the term is defined to include – in addition to patents -- know-how, technical information and intellectual property of any kind.

## IV. WIFI RAIL DOES NOT NEED TO PROVE PATENT INFRINGEMENT IN ORDER TO ESTABLISH A BREACH OF THE LICENSE AGREEMENT BASED ON BART'S USE OF WIFI RAIL'S TECHNOLOGY

WIFI Rail gave BART a license to use WIFI Rail's technology once the License Agreement ended, by its terms, in 2029. However, WIFI Rail did not give BART a license to use that technology if BART breached the contract before that time. In the instant action, WIFI Rail alleges that BART improperly terminated the agreement. As a result, BART is not entitled to a license to WIFI Rail's technology. It does not follow from this, however, that WIFI Rail is bringing suit against WIFI Rail for patent infringement.

Section 9.2 of the License Agreement states:

> (a)  In consideration of BART's having provided WiFi Rail... an operating transit environment (fiber, trains, track way, tunnels, grade, aerial and engineering support) for the development of WFR Technology, WiFi Rail hereby grants a fully-paid, non-exclusive, perpetual license to practice and use the WFR Technology within the Field of Use on the terms set forth in this Section 9.2 (the "WFR Technology License")...
>
> (b)  The WFR Technology License shall become effective immediately upon the Occurrence of a Release Event.

(Dkt. No. 1-1 at 94-95.)

The term "WFR Technology" is defined in section 9.1 as:

> All patents, technical information, know-how, Software, Source Code and other intellectual property of any kind that are used by WiFi Rail from time to time in the design, installation and operation of the Wi-Fi Infrastructure, including all applicable modifications or improvements to such technology as are developed during the term of this Agreement, whether or not such modifications or improvements have been incorporated into the Wi-Fi Infrastructure or its operations during the term of this Agreement.

(Dkt. No. 1-1 at 94.)

The term "Release Event" is defined in section 9.1 as having the meaning for that term in Section 6.1 of the Escrow Agreement, which defines "Release Event" to include "the termination of the license in accordance with section 18.1(a). (Dkt. No. 1-1 at 94.)

Section 18.1. (a) is the Event of Default Provision. That provision states that BART cannot terminate WIFI Rail without providing written notice of a default and the opportunity to "cure" the

7

PLAINTIFF WIFI RAIL, INC.'S MPA IN SUPPORT OF MOTION TO REMAND
*WiFi Rail, Inc. v. BART* (Northern District of California, Case No. 3:18-cv-02269-EDL

1  default. See Section 18.1 (iii):

> If WiFi Rail materially fails to perform any other covenant in this Agreement within thirty (30) days after written notice from BART specifying the failure; provided that, if such failure cannot, with due diligence be cured within the thirty (30) days, WiFi Rail shall not be deemed to be in default if WiFi Rail begins to cure the failure within such thirty (30) day period and thereafter diligently prosecutes such cure to completion.

(Dkt. No. 1-3 at 46.)

When all of these provisions and definitions are read together, they prohibit BART from using WIFI Rail's "patents, know how, technical information and intellectual property of any kind " without the consent of WIFI Rail. In other words, if BART terminates the contract unlawfully, it does not have the right to use the "WFR Technology".

The license from WIFI Rail to BART, under section 9.2 (b), "shall become effective immediately upon the occurrence of a Release Event". (Dkt. No. 1-1 at 94-95.) There has been no "Release Event". There would be a Release Event when the contract ended, by its own terms, in 2029. Then, BART would receive the right to use "WFR Technology". As it stands now, however, BART does not have this right.

WIFI Rail is entitled to seek legal relief to prevent BART from using WIFI Rail technology, or to seek damages in redress for BART's use of its technology. Any such claims do not necessarily involve a claim for patent infringement, because WIFI Rail's "technology" is broader than the patents it holds.

## ARGUMENT

### I. REMOVAL IS NOT PROPER BECAUSE WIFI RAIL DID NOT ASSERT A CLAIM INVOLVING A FEDERAL QUESTION IN ITS COMPLAINT

#### A. The Defendant BART Has the Burden of Demonstrating That Removal Is Proper

BART has the burden of establishing that WIFI Rail's action is "founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(b); *Ethridge v. Harbor House Restaurant*, 861 F.3d 1389, 1393 (9th Cir. 1988). This is a heavy burden because the

removal statute is strictly construed, and any doubt is to be resolved in favor of remand. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

> Because of the "Congressional purpose to restrict the jurisdiction of the federal courts on removal," *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941), the statute is strictly construed, *id*. at 108-09, and federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citation omitted). [The defendant] . . . has the burden of establishing that removal was proper. *Harris v. Provident Life and Accident Ins*. Co., 26 F.3d 930, 932 (9th Cir. 1994) (quotations and citations omitted).

*Duncan*, 76 F.3d at 1485.

BART has not met its burden of establishing that WIFI Rail's claim is founded on a question of federal law. As explained above, the only potential aspect of this case which would involve a federal question relates to BART's unauthorized use of WIFI Rail's technology. But WIFI Rail's claims do not require pleading or proving patent infringement in order to establish an unauthorized use of its technology. Therefore, subject matter jurisdiction is absent.

**B.     This Action Is Subject To Remand Because The Complaint Does Not State A Claim For Relief Which Necessarily Implicates A Substantial Issue Of Federal Law**

28 U.S.C. §1441 permits removal of any civil action, commenced in a state court, over which a federal court has original jurisdiction. 28 U.S.C. §1441(a); *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 474-75 (1998). Where removal is based upon a claim arising under federal law, the action may be removed, without regard to the citizenship of the parties. 28 U.S.C. 1441(b).

A defendant may remove a complaint from state court if "the district courts of the United States have original jurisdiction" over the action. 28 U.S.C. § 1441(a). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively

9
PLAINTIFF WIFI RAIL, INC.'S MPA IN SUPPORT OF MOTION TO REMAND
*WiFi Rail, Inc. v. BART* (Northern District of California, Case No. 3:18-cv-02269-EDL

allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). "Thus, it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393; *Ross v. Haw. Nurses' Ass'n Office & Prof'l Emples. Int'l Union Local 50*, Civ. No. 18-00023 JMS-RLP, 2018 U.S. Dist. LEXIS 22262, *17-18 (D. Haw. Feb. 12, 2018). Therefore, even if, *arguendo*, the complaint could be construed to set forth both federal and state causes of action, it is WIFI Rail's prerogative to pursue only state claims, rendering removal improper.

Here, WIFI Rail does not allege a federal claim. Indeed, BART concedes as much in its removal petition. Therefore, removal is not proper. (Notice of Removal, Dkt. No. 1 at 2:23-24, 27-28.)

## II.  THERE IS NO PATENT JURISDICTION IN THIS ACTION

### A.   This Action Lacks Federal Jurisdiction Because It Does Not Necessarily Require The Resolution Of A Substantial Question Of Federal Law

It has long been noted that a case does not automatically "arise under" federal law simply because a patent is implicated in an action. *Gunn v. Minton*, 568 U.S. 251, 264 (2013) ("As we recognized a century ago, the Federal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject-matter of the controversy."). The federal courts have long distinguished "between a patent claim which arises under federal statutes relating to patents and which requires the court to interpret the validity and scope of a particular patent within section 1338, and a contract claim in which patent issues are merely incidentally implicated." *Boggild v. Kenner Products, Div. of CPG Products Corp.*, 853 F.2d 465, 468 (6th Cir. 1988) (emphasis in original). In the latter circumstance, "[a] case does not arise under the patent laws merely because questions of patent law may arise in the course of interpreting a

contract." *Id.* at 468 (6th Cir. 1988).

Federal jurisdiction over patent matters is set forth in 28 U.S.C. §1338, which states, in pertinent part, that federal courts have original, exclusive jurisdiction over "any civil action arising under any Act of Congress relating to patents . . . ." 28 U.S.C. § 1338(a) ("Section 1338(a)"). Like other statutes creating federal jurisdiction, Section 1338(a) jurisdiction covers "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Christianson v. Colt*, 486 U.S. 800, 809 (1988).

The "well-pleaded complaint" rule looks not only to what has actually been pleaded in the complaint, but also to what should have been pleaded to state each claim completely. *Tech. Licensing Corp. v. Intersil Corp.*, No. C 09-04097 RS, 2009 U.S. Dist. LEXIS 129941, *7 (N.D. Cal. Dec. 18, 2009). Further, "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475, 118 S. Ct. 921, 139 L. Ed. 2d 912 (1998). "Plaintiffs are free, however, to disavow any rights they might otherwise claim under federal law, and attempt to show that the conduct [violates] state law." *Tech. Licensing Corp.*, 2009 U.S. Dist. LEXIS 129941 at *7-8. This means that -- although WIFI Rail could prove BART breached the provisions of the license agreement by infringing on its six patents -- WIFI Rail can also prove a breach by establishing unauthorized use of its confidential know-how and technology. Not surprisingly, WIFI Rail elects the latter option.

**B.     Analogous Case Law Dictates That This Action Be Remanded To State Court**

There is substantial authority for the proposition that an action which only incidentally touches upon patents is insufficient to vest subject matter jurisdiction.

In *Tech. Licensing Corp. v. Intersil Corp.*, No. C 09-04097 RS, 2009 U.S. Dist. LEXIS 129941, *8 (N.D. Cal. Dec. 18, 2009), the parties' disputes arose from a patent license agreement. *Id.*

11
PLAINTIFF WIFI RAIL, INC.'S MPA IN SUPPORT OF MOTION TO REMAND
*WiFi Rail, Inc. v. BART* (Northern District of California, Case No. 3:18-cv-02269-EDL)

at *1. The initial complaint asserted only a claim for breach of contract and related claims arising under state law. *Id.* at *1-2. In August of 2009, the plaintiffs filed a supplemental complaint, alleging that the defendants engaged in unfair competition under California Business & Professions Code § 17200 by "marking data sheets with the numbers of surrendered patents instead of the reissue patents that replaced them." Contending that plaintiffs had thereby implicitly invoked the section of the Patent Act entitled "False Marking," 35 U.S.C. ¶ 292(a), the defendants attempted to remove the action to federal court. *Id.* at *2.

In remanding the action, the court noted that:

> Defendants' removal to this Court, and their opposition to this motion, is premised on their presumption that plaintiffs can only establish that the conduct alleged is unlawful, unfair, or fraudulent if they ultimately prove that it violates 35 U.S.C. ¶ 292(a). Whether or not plaintiff might be able to show that the alleged conduct violates that section, however, plaintiffs may elect to attempt to prove that it otherwise constitutes wrongful conduct sufficient to support a claim under state law.

*Id.* at *8. The situation here is nearly identical. The agreement at issue here, like in *Tech. Licensing Corp.*, covers, among other things, patented technology. In proving the state law claims at issue, it is possible, but not necessary, to prove patent infringement. *Tech. Licensing Corp.* dictates that in this situation -- where a plaintiff elects not to attempt to prove a patent infringement -- the case be remanded to state court.

Similarly, in *AT&T v. Integrated Network Corp.*, four former employees of AT&T Labs left AT&T employment and went to work for Integrated Network Corp. ("INC"). *AT&T v. Integrated Network Corp.*, 972 F.2d 1321, 1322 (Fed. Cir. 1992). Shortly after commencing their employment with INC, the former AT&T employees filed for a patent on technology that AT&T claimed was developed in AT&T labs. *Id.* AT&T brought state law claims for breach of contract, breach of fiduciary duty, misuse and misappropriation of proprietary information, and inducing breach of contract. *Id.* INC removed the case to district court arguing that the court would have to determine when the technology was invented — a substantial issue of patent law. *Id.* at 1323. The district court

agreed, but the Federal Circuit reversed. It held that AT&T's claims were all traditional contract and tort claims involving breach of contract. *Id.* The only patent issue was the timing of when the ideas for the patented items were conceived, and even that was more an issue of common sense than of patent adjudication. *Id.*

In a later case, *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, the Federal Circuit again found that state law claims of misappropriation of trade secrets, breach of contract and breach of fiduciary duty did not create a substantial issue of patent law. *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277, 1279-80 (Fed. Cir. 2001). A former employee of Uroplasty, upon leaving Urolplasty's employment, filed for a patent on technology that Uroplasty claimed was their proprietary information. *Id.* at 1279. In that case, Uroplasty filed an action for interference against the patent and its state law claims separately. *Id.* The Federal Circuit held that although the patent might in fact be evidence to support Uroplasty's claims, its presence was not enough to confer jurisdiction. *Id.* at 1280.

Most recently, the Federal Circuit found that a scientist who left the University of Texas and subsequently patented UT's allegedly proprietary material for a Japanese company, NTT, could be sued in state court for tortious interference. *Bd. of Regents v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358, 1363 (Fed. Cir. 2005). NTT argued that in order for UT to show the business expectancy prong of a tortious interference claim, UT would have to prove the validity of the patents. *Id.* at 1362. The court disagreed. The possibility that the validity of the patent could arise as a defense was not sufficient to create jurisdiction. *Id.* at 1363 ("[T]he presence of a possible question of inventorship does not convert the state law action into one arising under the patent laws.").

*Accord*: *Biosensory, Inc. v. Bedoukian*, 3:06-CV-2010 (RNC), 2007 U.S. Dist. LEXIS 56118, *1-2 (D. Conn. July 31, 2007) (remanding to state court action alleging breach of contract and related claims on ground that allegations of sale of patented products did not raise issue of patent law);

*Wham-O Mfg. Co. v. All-American Yo-Yo Corp.*, 377 F. Supp. 993, 994-95 (E.D.N.Y. 1973) (remand to state court ordered where case involved breach of agreement relating to sale and manufacture of items, and not validity of patent covering such items); *Green Edge Enters., L.L.C. v. Int'l Mulch Co.*, No. 4:09 CV 120 DDN, 2009 U.S. Dist. LEXIS 27384 (E.D. Mo. Mar. 30, 2009) (mere fact that the contract at issue was a patent licensing agreement did not automatically render the holder's claims as ones arising under federal patent law, which would allow the court to exercise jurisdiction under § 1338(a.).).

### III. THE ABSENCE OF ANY VALID BASIS FOR REMOVAL WARRANTS AWARDING PLAINTIFF ITS FEES AND COSTS ASSOCIATED WITH THIS MOTION TO REMAND

Finally, WIFI Rail asks the Court to include in its order remanding the case an order Requiring BART to pay WIFI Rail's "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

The Court should exercise its discretion and grant WIFI Rail's request for fees and costs given defense counsel's conduct in this matter. By presenting a motion to the court, defense counsel represented that the removal was warranted by existing law and, further, that the removal was not being presented for any improper purpose, such as to cause unnecessary delay. Fed. R. Civ. P. 11(b).

Defense counsel's practice of filing this motion without having a substantial probability of success, without meeting and conferring prior to its filing, and filing the removal immediately prior to the then-scheduled deposition of BART's Managing Director -- is unacceptable. (See Curtiss Decl., Ex. A.) Prior to the removal, there was a little over one month to trial in this action. BART's removal is a transparent attempt to avoid essential discovery and delay its day of reckoning.

An award of WIFI Rail's fees and costs in filing this motion to remand is warranted. Prior to the hearing of this motion, WIFI Rail will provide the Court with a declaration setting forth its costs and expenses.

## CONCLUSION

As demonstrated above, this court lacks removal jurisdiction over this action, because no substantial issue of federal law is at issue. Therefore, the Court should grant WIFI Rail's motion to remand this action to the superior court and award WIFI Rail its just costs and expenses incurred in connection with the defendant's attempted removal of this action.

Dated: April 20, 2018

Respectfully Submitted,

STANZLER LAW GROUP

By: /s/Jeffrey M. Curtiss
Jeffrey M. Curtiss
Attorneys for WiFi Rail, Inc

1  PROOF OF SERVICE
   [C.C.P. § 1013, C.R.C.§ 2008, F.R.C.P. Rule 5]

2

3              I, Sharran L. Rodd, state:

4  I am a citizen of the United States. My business address is 2275 E. Bayshore Rd., Suite 100, Palo Alto, CA 94303. I am employed in the City of Palo Alto and County of Santa Clara. I am over the age of eighteen years and not a party to this action. On the date set forth below, I caused to be served the foregoing documents described as:

5

6  PLAINTIFF WIFI RAIL, INC.'S NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES

7

8  on the following persons in this action via email addressed as follows:

9  Adam Friedenberg
   Lauren E. Wood
   Glynn & Finley, LLP
10 One Walnut Creek Center
   100 Pringle Avenue, Suite 500
11 Walnut Creek, CA 94596

12 Victoria R. Nuetzel
   San Francisco Bay Area Rapid Transit District
13 Office of the General Counsel
   300 Lakeside Drive, 23rd Floor
14 Oakland, CA 94612

15  :   BY FIRST CLASS MAIL - I am readily familiar with my firm's practice for collection and processing of correspondence for mailing with the United States Postal Service, to-wit, that correspondence will be deposited with the United States Postal Service this same day in the ordinary course of business. I sealed said envelope and placed it for collection and mailing this date, following ordinary business practices.

16

17

18  :   BY FACSIMILE - I caused said document to be transmitted by Facsimile machine to counsel at the numbers indicated after the address(es) noted above.

19

20  :   BY HAND DELIVERY

21  :   BY Federal Express

22  X:  BY email IN THE FORM OF A PDF FILE

23  [ ]  (STATE) I declare under penalty of perjury that the foregoing is true and correct.

24  [X]  (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

25       Executed on April 20, 2018 at Palo Alto, California.

26   Sharran L. Rodd
     (Type or Print Name)                               Signature

27

28